## WOODWARD v. FELTS.

*(Supreme Court, General Term, Third Department.* February 4, 1891.)

HUSBAND AND WIFE—SEPARATE PROPERTY—RIGHTS OF CREDITORS.

Plaintiff lent her husband, at various times, money. which he used with his own in buying and trading horses on his own account. Plaintiff testified that, when the last team was bought, her husband told her it was to be hers, but retained it in his possession. *Held,* that that was not sufficient, as against the husband's creditors, to establish that he was her agent in these transactions, and that she was the owner of the team.

Appeal from circuit court, Columbia county.

Action by Sarah L. Woodward against John M. Felts, as sheriff of Columbia county, to recover the value of a horse levied upon by defendant by virtue of an execution against plaintiff's husband, and claimed by plaintiff as hers. Plaintiff appeals from a judgment dismissing her complaint.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Hawver & Cochrane, (A. V. S. Cochrane,* of counsel,) for appellant. *Carrington & Emerson,* for respondent.

LEARNED, P. J. The defendant, under execution against Perry Woodward, plaintiff's husband, sold a mare February 21, 1889. The plaintiff claims that the mare was hers, and sues to recover the balance. She was nonsuited at her trial, and appeals. The question is whether there was evidence of her ownership which should have been submitted to the jury. She says her husband kept a store in 1885; that she furnished most of the money, and considered that they were owners in common; and, as she afterwards states the matter, that she loaned him the money. The theory of a loan seems to be finally relied on. She says that she loaned him $150 to buy a span of horses, and then loaned him $140 more. She says that she considered him her debtor. Her husband bought a horse of Myers, and traded that horse with one Link for a team, paying the balance in cash. The mare in suit was obtained by trading the old team with Johnson, and getting a new team, of which the mare was one. Her husband paid something to boot. When Johnson came and left the team, plaintiff was present, and her husband said he wanted her to understand that this was now her team. She said she wanted it understood that this was her team. She testifies that she never got title to the mare from her husband; that she does not claim that her husband transferred it to her; that the only claim of title she has rests on the transaction above stated. The plaintiff further testifies that, when the first team was bought, she advanced $140, and the difference

between $140 and $225 was paid by her husband; that he said it was her team. She further testifies that her husband owned the horse he got from Myers; that she loaned him at different times $150 in all, without any reference to her purchase of the horse; that when he got the team, at the time she let him have $140, he continued to use it in his business. It is plain from her testimony that she never owned the horse bought of Myers. The loan to her husband of $150 was made without any reference to that horse. Subsequently she states that she loaned him the $140. If this be true, then he was not her agent in the purchase of the Link team; for in that case the money was his, and the purchase was not made as her agent. At the close of the case the plaintiff asked to go to the jury on the question whether the husband was not acting as her agent in the purchase of the first team, and in subsequent transactions; but there seems to be no evidence of such agency. She says she told her husband that he could have the money, $140, if she could have the team; but, if he were her agent, then she would have been the purchaser without such arrangement, and her testimony that there was such conversation contradicts the position that her husband was her agent. Taking her testimony most favorably for her, it seems that before borrowing, and before purchasing the Link team, her husband promised verbally that the team should be hers. Then he bought and continued in possession. Afterwards her husband traded the Link team with Johnson for another team, and paid about $45. The plaintiff says that, when the team was delivered, she told Johnson the team was hers. This statement of course gave her no title. She says her husband told her it was her team, but it remained in her husband's possession and use. Her husband remains indebted to her for the borrowed money, for she continually asserts that she loaned him the money. She states further that she does not claim that her husband ever transferred to her the horse in question. She does not claim it as security for the loans; and, as she does not claim in her testimony that she paid Johnson for the team, or that she bought the team of him, she fails to show any title. She cannot hold the inconsistent positions of having lent money to her husband and of thereby being the owner of the property taken by him in exchange for other property partly paid for by such borrowed money. While undoubtedly there may be dealings between husband and wife, lending of money by her to him, purchases by him as her agent, possession by him of property belonging to her, and the like, yet such transactions, for the protection of his creditors, should be clear and distinct in their character. We think the judgment should be affirmed, with costs. All concur.